IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br><br> vs. <br><br><br><br> CRAIG THOMAS BALOG, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br><br><br><br><br><br> Case No. 2:09-CR-018 |

Before the Court is Defendant's Motion to Suppress. The Court held an evidentiary hearing on April 24, 2009. Timothy Barnes represented the United States of America and Mark Gregersen represented the defendant. The United States called as witnesses Brittany Hendricks and Scott McCullough. The defendant did not call any witnesses. Having considered the evidence presented at the hearing and the written briefs submitted by the parties, the Court issues this Memorandum Decision and Order.

### FINDINGS OF FACT

After considering the evidence presented at the evidentiary hearing, the Court makes the following findings of fact.

On the evening of November 28, 2008, Brittany Hendricks went to the sheriff's office in Riverton, Utah, to inform law enforcement officers that there was a gun in her home and that she

was scared for her life.  She told officers she purchased the gun for her boyfriend, Craig Balog, who was on probation and a convicted felon and could not buy it himself.  She explained that Balog had been using the gun recently, and that she was afraid he might use it to injure her.  She told them the gun was in the house where she and her mother and Balog were living, although she was planning to vacate the premises shortly.  She acknowledged that when she purchased the gun, she had filled out the written form and had checked the box that said the gun was for herself and that she was not purchasing it for anyone else.  She told the officers that was not true, that she had purchased the gun for Balog.

Ms. Hendricks told the officers that the residence was located on Diamondback Drive in Riverton.  She, her mother, and Balog rented the home in July 2008, and all three individuals were listed on the rental agreement as renters.  Several other people resided in the home as well.  No restrictions were placed on any of the regular tenants concerning access to the home, and no portions of the home were restricted to any of the tenants.  "Anyone could go in any room."  (T. 8:24).  Although Ms. Hendricks was in the process of moving out of the residence at the time of her complaint to the sheriff's office, she still had personal property located in the residence.

In addition to the legal prohibition against gun possession imposed on Balog as a convicted felon, such a prohibition was a condition of his probation status with the State of Utah.  The conditions also require any probationer to submit to searches and seizures by the Utah Department of Corrections, Adult Probation and Parole, where reasonable suspicion exists to believe that he or she has violated any of the conditions of probation.  Because of this, the Riverton sheriff's office contacted Utah Adult Probation and Parole on the evening of November

28, 2008. Officer Scott McCullough, a supervisor with Adult Probation and Parole, was on duty that night. As a part of his duties, he was responsible for assisting in transportation or arrests, performing home visits, or for performing "call-outs," which occur when there is a need for an officer in the field.

After receiving the call, Officer McCullough went to the Riverton sheriff's substation where he discussed the situation with the officers there. They discussed the circumstances of the relationship between Balog and Ms. Hendricks, as well as some other concerns, and officers decided to try to make contact with Balog at the Diamondback residence. When officers arrived at the residence, the home was dark and the pickup truck reportedly owned by Balog was not present. Officer's knocked on the door, but there was no answer.

While Officers attempted to contact Balog at the Diamondback residence, Ms. Hendricks and her mother remained at the sheriff's office. After officers found that no one was present at the home, the sheriff's office was radioed and Ms. Hendricks and her mother were brought to the residence. The officers asked Ms. Hendricks to show them where the gun was located in the residence. Ms. Hendricks allowed the officers to enter and search the residence. She showed them where they could find the gun that Balog had been using. The gun was located in an unlocked hall closet, and was contained in a black plastic container. The container was locked with a padlock that had been purchased by Balog. Officers asked for a key to open the gun case. Ms. Hendricks' mother provided them with a copy of the key that had been given to her by Balog.

On January 7, 2009, a Grand Jury indicted Balog on one count of possession of a firearm

by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Balog has now requested the Court to suppress the evidence obtained as a result of the search of the Diamondback residence.  Because the search was lawful under the Fourth Amendment to the United States Constitution, Balog's motion is DENIED.

## DISCUSSION

### I. The Search of the Diamondback Residence was Reasonable.

Officer McCullough's search of the Diamondback residence was lawful because it was reasonable.  The Fourth Amendment to the United States Constitution does not prohibit all searches and seizures by government actors.  *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).  The Fourth Amendment only prohibits searches and seizures that are unreasonable.  *Id.*  Courts have long recognized exceptions to the general rule that a warrant supported by probable cause is required to satisfy the Fourth Amendment.  *See Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987); *Jimeno*, 500 U.S. at 250-51.  For example, searches are deemed reasonable for purposes of the Fourth Amendment where the search is based on valid consent by an authorized person, *see United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004), or based on special law enforcement needs.  *Griffin*, 483 U.S. at 873.  A "special needs" exception exists where circumstances "make the warrant and probable-cause requirement impracticable." *Id.* (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (BLACKMUN, J., concurring in judgment)).

In this case, the search of the Diamondback residence was reasonable.  It was performed with the consent of Ms. Hendricks, a person with full authority and control over the premises searched, and, pursuant to Balog's probation conditions, the search was based on reasonable

suspicion that Balog was in violation of his conditions of probation.

## A.     Balog's status as a felon and probationer provided Officer McCullough with Authority to Search the Diamondback Residence Based on Reasonable Suspicion.

Officer McCullough's search of the Diamondback residence was lawful because Balog was a probationer and was subject to searches based on reasonable suspicion. The law is clear that although probationers are entitled to Fourth Amendment protections, their liberty is not absolute and is dependent on compliance with certain probation restrictions. *State v. Martinez*, 811 P.2d 205, 209 (10th Cir. 1991) (quoting *Griffin*, 483 U.S. at 874). Accordingly, "a probation search will satisfy the Fourth Amendment if it was 'carried . . . out pursuant to state law which itself satisfies the Fourth Amendment's reasonableness requirement." *United States v. Carter*, 511 F.3d 1264, 1268 (10th Cir. 2008) (quoting *United States v. Lewis*, 71 F.3d 358, 361 (10th Cir. 1995)). Not only does Utah's probation system meet this requirement, but the two prerequisites that must be met prior to a probation search in Utah have been found specifically by the Tenth Circuit to satisfy the Fourth Amendment's reasonableness requirement. *Id.* Those two prerequisites are (1) that the probation officer must have reasonable suspicion to believe that the probationer has committed a probation violation or a crime, and (2) the search must be reasonably related to the probation officer's duties. *See id.*

As stated by Officer McCullough, every probationer in the State of Utah is subject to certain standard conditions. Those standard conditions preclude a probationer from possessing a firearm or other dangerous weapon and also require a probationer to submit to searches and seizures by Adult Probation and Parole based on reasonable suspicion. Therefore, in this case the Court must determine (1) whether Officer McCullough had reasonable suspicion to search

Balog's residence to determine whether he was currently violating the terms of his probation, and (2) whether the search was reasonably related to Officer McCullough's duties as a probation officer.

### (1) Reasonable Suspicion

Officer McCullough had reasonable suspicion to search Balog's residence based on the information provided by Ms. Hendricks. Utah's reasonable suspicion standard, as applied in the probation and parole context, provides that searches must be based on more than mere hunches, casual rumors, whims, or a person's general reputation. *See State v. Velasquez*, 672 P.2d 1254, 1262 (Utah 1983); *Carter*, 511 F.3d at 1268. Courts generally find that this standard is met where a probation officer's search is based only on a tip by an anonymous informer or another source. *State v. Martinez*, 811 P.2d 205, 209 (Utah Ct. App. 1991).

In this case, Officer McCullough had reasonable suspicion to believe that Balog, a convicted felon and probationer, currently possessed a firearm. On November 28, 2008, Ms. Hendricks went to the sheriff's office in Riverton, Utah, and informed law enforcement officers that there was a firearm in the residence that she shared with Balog, and that Balog had been using the firearm. This information, provided by an identifiable resident of the Diamondback property, was sufficient to provide reasonable suspicion that Balog was violating his probation by possessing a firearm.[1]

---

[1] Balog appears to argue that, based on her credibility, Ms. Hendricks' information was insufficient to create reasonable suspicion. He makes this argument because Officer McCullough had been told that Ms. Hendricks had admitted to purchasing the gun under the false pretense that the gun was for herself. Balog essentially argues that because Ms. Hendricks lied once in the past, she could not be trusted in the future. Balog's argument fails. The Court found Ms. Hendricks to be a credible witness. Furthermore, if anonymous tips from unidentified informants are sufficient to create reasonable suspicion under Utah law, information from a present, identified, acquaintance of the defendant is sufficient especially when that informant is also admitting to committing a criminal act.

(2)  Officer McCullough's Duties as a Probation Officer

The search of the Diamondback residence was within the purview of Officer McCullough's duties as an officer with Adult Probation and Parole. The undisputed evidence shows that on November 28, 2008, Officer McCullough was employed as a supervisor within the Adult Probation and Parole division of the Department of Corrections. As a part of his duties that night, Officer McCullough was responsible for assisting in transportation or arrests, performing home visits, or for performing "call-outs," which occur when there is a need for an officer in the field. As stated by Officer McCullough, when someone reports that a probationer is in possession of a firearm, a probation officer's duties include performing an investigation to conclude whether or not the report is accurate and to take appropriate action. These duties reveal that the search of a probationer's residence, based on reasonable suspicion that the probationer is currently violating the terms of his probation, is reasonably related to the duties of a probations officer such as Officer McCullough. The search of the Diamondback residence was therefore appropriate based on the terms of Balog's probation.

**B.  The Search was also Valid Because Ms. Hendricks Provided Valid Consent for the Search of the Diamondback Residence.**

Officer McCullough conducted a lawful search of the Diamondback residence based on Ms. Hendricks' valid consent. Searches based on voluntary consent by an authorized third party are considered lawful under the Fourth Amendment. *Ohio v. Robinette*, 519 U.S. 33 (1996); *Kimoana*, 383 F.3d at 1221. In order to be considered voluntary, the Government must show, from all of the circumstances, that consent was not obtained through coercion, force, or intimidation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 227 (1973). In order for a third-

party to be able to consent to a search of property, that person must have either actual authority or apparent authority to consent to the search. *Kimoana*, 383 F.3d at 1221. In this case, the facts show Ms. Hendricks' consent was unequivocally voluntary and that she indeed possessed actual and apparent authority to consent to the search of the Diamondback residence.

### 1) Consent

Ms. Hendricks' undisputed testimony indicates that she voluntarily chose to inform law enforcement officers that there was a gun in the Diamondback residence and that Balog, a felon, had been using it. She also testified that she contacted the officers in an effort to have them respond to her residence. Her undisputed testimony also indicates that upon her arrival at the Diamondback residence, she voluntarily permitted officers to search the home.

Balog argues that Ms. Hendricks did not consent to the search because she was told by officers that she needed to go inside the house, and that at the hearing she failed to say that she consented to either the search or the officers' entrance into the residence. This conclusion is incorrect. The clear inference, based on the totality of the circumstances, is that Ms. Hendricks voluntarily consented to the search. Indeed, it is also accurate to say that she *requested* the search. Ms. Hendricks chose to contact law enforcement. Ms. Hendricks chose to inform law enforcement that there was a firearm in the home. She informed law enforcement where the firearm was kept. Finally, Ms. Hendricks' irrefutably stated that she allowed law enforcement to search the Diamondback residence. Accordingly, the Court finds that Ms. Hendricks voluntarily consented to the search of the Diamondback residence.

### 2) Authority

Ms. Hendricks possessed both actual and apparent authority to consent to a search of the Diamondback residence. A third-party possesses authority to consent to a search of property where that party has "(1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir. 1999). In this case, the facts clearly demonstrate that Ms. Hendrick's had actual authority to consent to the search because she had mutual use of the property by virtue of joint access as well as control over the property.

To satisfy the first standard, mutual use by virtue of joint access, the Government must show that Ms. Hendricks had authority to "enter[] the premises or room at will, without the consent of [ Balog]." *See id.* at 1330. The Government has met its burden. Ms. Hendricks' testimony revealed that she had been living in the residence for a number of months, that she had possessions in the home, and she had a key to the residence. Moreover, Ms. Hendricks name was listed on the rental agreement. Finally, Ms. Hendricks testified that she was free to move within the home at-will, and could go in any room or portion of the home as she chose. These facts are sufficient to demonstrate that Ms. Hendricks could move freely within the home without needing the permission of any other person, including Balog. She had actual authority to consent to the search.

The second *Rith* standard mentioned above also indicates that Ms. Hendricks' had actual authority to consent to the search. This standard requires a normative inquiry that considers the relationship between the third party and the defendant and whether that relationship creates a

presumption that the third party had control over the property for most purposes. *Id.* at 1330. Here, Ms. Hendricks and Balog jointly resided in the Diamondback residence for some time. This relationship certainly created a presumption that Ms. Hendricks' had control over the property for most purposes. Additionally, at the time of the search officers were aware that Balog and Ms. Hendricks had been involved in a romantic relationship. The only logical conclusion based the *Rith* factors is that Ms. Hendricks' had actual authority to consent to the search of the Diamondback residence.

       3)      <u>Apparent Authority</u>

Not only was Ms. Hendricks' consent to the search valid based on actual authority, but the facts available to the officers at the time of the search were sufficient to create in Ms. Hendricks' apparent authority to provide valid consent. Apparent authority to consent is created where the facts available to an officer at the time of consent would lead a reasonable person to believe that the person providing consent had authority over the premises. *Kimoana*, 383 F.3d at 1222. Where an officer reasonably relies on consent provided under those circumstances, the officer's search is deemed reasonable under the Fourth Amendment. *Id.* at 1221.

In this case, the facts available to Officer McCullough at the time of the search justified his reliance on Ms. Hendricks' consent. The clear import of Ms. Hendricks' testimony was that she directed officers to the Diamondback residence and that she informed officers that although she was in the process of moving, she resided in that residence. Based on these facts, it was reasonable for Officer McCullough to believe that Ms. Hendricks had authority to consent to the search of the Diamondback residence.

## **CONCLUSION**

Based upon the foregoing, the Court DENIES Balog's Motion to Suppress.

Dated this 13th day of August, 2009.

_____
Dee Benson
United States District Judge